293 So.2d 615 (1974)
James Dean MESSEX, Plaintiff-Appellant,
v.
GEORGIA-PACIFIC CORPORATION, Defendant-Appellee.
No. 4499.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1974.
Rehearing Denied May 14, 1974.
Writ Refused June 21, 1974.
Mansour & Davis, by Alfred A. Mansour, Michael H. Davis, Alexandria, for plaintiff-appellant.
Joseph Wilson of Gaharan & Richey, Jena, for defendant-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Plaintiff James Messex appeals from the judgment dismissing his claim against defendant Georgia-Pacific Corporation for workmen's compensation benefits. The trial court found that Messex failed to bear the burden of proving the existence of a psychiatric disability. We affirm.
Messex was injured on December 30, 1971 when the rollers of a plywood drier were reversed. Messex was unable to explain how his hand and arm were pulled into the machine. He suffered severe lacerations necessitating a three hour operation. There was no injury to the bones or nerves and Messex recovered from his physical injuries during March of 1972. On his return to employment he was assigned the same work. When Messex refused to work because he was afraid of the machinery, the company discharged him. Compensation payments were terminated on April 17, 1972. By that time Messex had received $742 in compensation benefits, and $1,084.80 in medical expenses had been paid by the company on his behalf.
*616 Messex then went to work for a company in Everlan, Texas. After a month or so he quit that job and went to work for another company in Fort Worth, Texas. He quit that job and went to work for his father in Oklahoma as an attendant at a gas station. While there he refused to work with the tire changing machine because of his fear of machinery. He quit that job and moved to Monroe to take a job driving a truck to service a Coca Cola route. He quit that job to go into the Army as a Military Policeman. At trial he had completed basic training and the specialized training for military police. He was just starting work at his permanent duty station. He had purchased and was using a Honda "350" motorcycle for transportation so that his wife could use their automobile to seek employment.
On direct examination Messex was asked why he changed jobs so frequently. At Tr. 124 he answered:
"Cause I was trying to find a better job, trying to make more money or didn't like the work. I couldn't find nothing that I could really work at that I liked or that made enough money."
Messex's attorney sent him to see one psychiatrist for evaluation only and the company sent him to another psychiatrist for evaluation only. The first psychiatrist diagnosed an anxiety neurosis, chronic, moderate, secondary to the traumatic accident of December 30, 1971. This was based on a July 24, 1972 one hour examination which consisted of a question and answer and narrative session. Another examination was conducted on April 9, 1973 and the psychiatrist found little change from the first examination. The diagnosis was based almost entirely on Messex's conversation with the psychiatrist. The psychiatrist thought that Messex's prognosis was "fairly good" and that "he should be fairly free of most of the difficulty within six months to a year." Tr. 48.
The second psychiatrist saw Messex for some 45 minutes to an hour on each of three visitsNovember 28, 30 and December 1, 1972. He conducted essentially the same type examination as the first psychiatrist and diagnosed Messex with no significant psychiatric impairment. Messex's special concerns were found to be normal concern for realistic everyday living. His specific refusal to return to work was related to Messex's need for secondary gain and his numerous references to a need for money. A vengeful attitude toward the company was also found and considered relevant to the diagnosis.
The first psychiatrist based his diagnosis in large measure on Messex's description of his before and after condition. The second psychiatrist found that Messex's condition after the accident was similar to his condition before the accident, and classified him as a "wanderer" both before and after the accident. The trial judge agreed with the second psychiatrist's evaluation.
The trial court was impressed by the fact that Messex failed to produce witnesses to substantiate his claim that the accident changed his personality. Both Messex and his wife stated that before the accident Messex was an avid hunter and fisherman. He liked to be with people and to go bowling. Afterward he lost interest in almost everything. Cross-examination revealed that there wasn't much support for Messex's statements that his before and after personality had been substantially changed. If such a change was evident, it could have been established by available witnesses known only to Messex and his wife. Their failure to call these witnesses was considered by the trial judge as relevant to a proper evaluation of the evidence.
When the testimony of the person seeking to establish the claim has been put in doubt but is susceptible of corroboration, the failure to call available witnesses possessing knowledge of the disputed relevant facts may be considered in evaluating that person's testimony. The testimony of Messex and his wife was extremely *617 subjective and completely self-serving. It was inconsistent with his military training and his use of a motorcycle and was therefore subjected to close scrutiny by the court. The factors evidencing the existence of a traumatic neurosis as related by Messex were at one time or another contradicted by Messex himself. There is no manifest error in the trial court's determination that Messex failed to sustain the burden of proving his case by a preponderance of evidence.
When a compensation claim is predicated upon traumatic neurosis or conversion reaction, the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of such a condition. Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3 Cir. 1970); Jackson v. International Paper Co., 163 So.2d 362 (La.App. 3 Cir. 1964).
The trial court judgment is affirmed at appellant's cost.
Affirmed.