**TRANSPORTATION INSURANCE COMPANY, Appellant,**

v.

**Joe J. MAKSYN, Appellee.**

**No. 15944.**

Court of Civil Appeals of Texas, San Antonio.

May 24, 1978.

Rehearing Denied July 21, 1978.

Melvin A. Krenek, Beckmann, Stanard & Olson, Inc., San Antonio, for appellant.

Frank Herrera, Jr., Hardberger, Branton & Herrera, San Antonio, for appellee.

KLINGEMAN, Justice.

This is a Workmen's Compensation case. Transportation Insurance Company, appellant here and plaintiff below, filed this suit to set aside an award granted to Joe J. Maksyn, defendant below and appellee here, by the Industrial Accident Board. Defendant filed an answer and counterclaim seeking to recover workmen's compensation benefits from the plaintiff on the basis of an occupational disease sustained in the course of his employment. Defendant claimed to have suffered an anxiety depression caused by the pressures of his employment which culminated on September 4, 1974, and asserted that this disease had caused numbness of his hands and feet, high blood pressure, and vertigo. Trial was to a jury. The jury, in answer to the special issues submitted, found that (1) Defendant has or had an occupational disease as a result of repetitious physical traumatic activities extending over a period of time; (2) that the occupational disease sustained by defendant arose out of and in the course of his employment; (3) that the occupational disease was a producing cause of his total incapacity; that the beginning date of total incapacity was September 4, 1974; and (4) that the duration of the total incapacity was permanent. Judgment was entered on the jury's verdict for 401 weekly payments of $70.00 each for total permanent incapacity, attorneys' fees, and interest. Transportation Insurance Company will be hereinafter referred to as plaintiff, and Joe J. Maksyn as defendant.

By five points of error, plaintiff asserts that the court erred in rendering judgment for the defendant because (1) there was no evidence of any physical activities which would produce an occupational disease; (2) that there was insufficient evidence to support the jury's finding that defendant suffered "repetitious physical traumatic activities"; (3) that there is no evidence that the beginning date of total incapacity began on September 4, 1974, and was therefore not compensable; (4) that the overwhelming weight and preponderance of the evidence showed that the defendant's disability, if any, was caused by his termination on October 28, 1974, and was therefore not compensable; and (5) that the overwhelming weight and preponderance of the evidence shows that defendant's anxiety depression was a non-compensable ordinary disease of life.

Defendant, at time of suit, was 62 years old. He began working with the Express-News Publishing Company in 1932 when he was 17 years of age, as a copy boy. He was

later promoted to assistant merchandise manager, to display advertising salesman, to production manager, to administrative executive, and finally to advertising service manager, a position that he held for approximately 28 years.

Defendant testified that he never worked less than 55 hours a week and frequently worked for 65 hours a week. His work schedule ran from Monday through Saturday and he generally worked some time on Sunday. He stated that at night he would receive phone calls from the office and many times had to return to work at night and that he frequently took work home.

Defendant testified that during the week before September 4, 1974, he worked 87½ hours, and that on the evening of September 4, 1974, he started feeling bad, that he felt pressure in his head and felt like he was going to black out. He then went home and went to bed and the next morning when he tried to get up, he felt weak and dizzy and later that day he went to his family physician. He thereafter returned to his office and advised his superiors of his illness and requested that he be given vacation time, which was granted. He remained on vacation for three weeks. On the fourth week, he began working approximately three to four hours a day. The following week, he worked approximately four to five hours a day, and the following week approximately seven to eight hours a day. On October 28, 1974, he was retired by his employer. At that time, he was sixty years of age.

In 1971, the Texas Legislature amended the section of the Workmen's Compensation Act relating to the definition of "injury" and "occupational diseases," which new provision is as follows:

Sec. 20. Wherever the terms "Injury" or "Personal Injury" are used in the Workmen's Compensation Laws of this State, such terms shall be construed to mean damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom. The term "Injury" and "Personal Injury" shall also be construed to mean and include "Occupational Diseases," as hereinafter defined. Whenever the term "Occupational Disease" is used in the Workmen's Compensation Laws of this State, such terms shall be construed to mean any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom. An "Occupational Disease" shall also include damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment; provided, that the date of the cumulative injury shall be the date disability was caused thereby. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident to an "Occupational Disease" or "Injury" as defined in this section. Effective Aug. 30, 1971. Tex. Rev.Civ.Stat.Ann. art. 8306, § 20 (Supp. 1978).

In its first two points of error, plaintiff asserts (1) that the Legislature did not intend that the phrase "repetitious physical traumatic activities" should include mentally traumatic activities and that this court should not make such construction; that since the defendant only proved the existence of mentally traumatic activities there was no evidence to support the jury's finding that the defendant suffered repetitious physical traumatic activities; (2) that the court erred in entering judgment for defendant because there is insufficient evidence to support the jury's finding that the defendant suffered repetitious physical traumatic activities and that the evidence presented was factually insufficient to establish a causal connection between the alleged physical activities and defendant's occupational disease.

Appellee asserts that the trial court did not err in entering a judgment because (a) there was legally and factually sufficient evidence to support the jury's finding that appellee had an occupational disease as a result of repetitious physical traumatic ac-

tivities extending over a period of time; and (b) there was legally and factually sufficient evidence to support the jury's finding that appellee suffered repetitious physical traumatic activities.

Plaintiff argues vigorously that it was not the intent of the Legislature to include mental traumatic activities and discusses in some detail the legislative background in connection with such amendment to Section 20, and points out that the House version of the amendment omitted the word "mental" from that of the Senate version. However, it is noteworthy that the amendment as adopted provides in Section 5, as follows:

It is the express intent of the Legislature in enacting this Act that nothing contained in this Act shall ever be deemed or considered to limit or expand recovery in cases of mental trauma accompanied by physical trauma. Tex.Rev.Civ.Stat.Ann. art. 8306, § 20 (Supp.1978).

A law note in Houston Law Review supports defendant's position, wherein it is stated:

In the past, Texas compensated mental injury resulting from physical trauma, physical injury resulting from mental trauma, and purely neurotic injury resulting from psychological stress. Section 5 of the Amendment guarantees this right of recovery to the extent that recovery is now possible. Most jurisdictions are in accord with the present Texas Law in allowing compensation for mental disease and injury. Medical science recognizes that mental disorders can arise out of the course and scope of employment. Mental disease or injury resulting from a work-related stimulus can cause a loss of wage-earning capacity by a diminished ability to function properly on the job. It belabors the question of compensability to ask if harm is done to the physical structure of the body when the impaired mental function is caused by factors which are part of the employee's work environment. Note, Texas Workmen's Compensation—Changes in Occupational Disease, 9 Houston Law. Rev. 597, 600–601 (1972).

One of the strongest cases supporting defendant's contention is a case by our Supreme Court many years before the adoption of the Amendment here involved, wherein a workman was allowed to recover for a physical injury arising after the worker saw a fellow worker fall and plunge to his death. In *Bailey v. American General Insurance Company,* 154 Tex. 430, 279 S.W.2d 315 (1955), the claimant and another workman were on a scaffold when one end gave way. The worker thought he was going to get killed, but he was caught in a cable and managed to jump to another building. After this experience, he tried to resume his employment, and although he was considered one of the better structural steelworkers, he could not continue. He had periods of "blanking out"; once, he literally froze, undergoing complete paralysis when trying to work at a height; he had trouble sleeping, and experienced violent nightmares. His blood pressure was affected; he was hypersensitive to pain; he had a tremor of the eyelids and his reflexes were underactive. The Supreme Court stated that the question was whether the claimant had suffered damage or harm to the physical structure of his body. The Court, in concluding that the claimant's psychic injury was compensable, stated:

The phrase 'physical structure of the body', as it is used in the statute, must refer to the *entire* body, not simply to the skeletal structure or to the circulatory system or to the digestive system. It refers to the *whole,* to the complex of perfectly integrated and interdependent bones, tissues and organs which function together by means of electrical, chemical and mechanical processes in a living, breathing, functioning individual. To determine what is meant by 'physical structure of the body', the structure should be considered that of a living person—not as a static, inanimate thing.

Plaintiff attempts to distinguish *Bailey* by its contention that there is a distinction between an injury produced by a single event and one produced by a slow buildup of stressful activities and argues that in the first situation there is little chance of a fraudulent or a frivolous claim. We see very little justification for a holding that a

claimant can recover for a neurosis occasioned by one traumatic experience, but cannot recover for a similar neurosis caused by a number of such traumatic experiences. The 1971 Amendment is generally regarded as an attempt to broaden and liberalize the Act by redefining the term "injury" and "occupational disease." It has been held that under the amended statute it is no longer necessary to allege and prove either an event traceable to a definite time, place or cause, or a listed compensable occupational disease. *Charter Oak Fire Insurance Company v. Hollis,* 511 S.W.2d 583, 584 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n. r. e.).

In *Gloor v. United States Fire Insurance Company,* 457 S.W.2d 925 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.), the plaintiff was employed as a proof setter and alleges that as a result of an excessive physical and mental stress and strain resulting from her work she sustained a nervous breakdown, resulting in her total and permanent incapacity to retain employment. The trial court granted a summary judgment for the insurance carrier on the basis that such allegation could not be an accidental injury as defined in the Act. The Beaumont Court of Civil Appeals reversed, holding that this was a matter of proof on the part of the plaintiff and was for the jury to determine.

Plaintiff argues that to permit recovery by defendant would open a "Pandora's Box" and employers would be subject to fraudulent and frivolous claims. This same contention has been made in the past to numerous types of negligence actions where recovery is now allowed, and we do not consider such argument as controlling, as a claim must be supported by sufficient proof to convince the trier of the facts.

We have found no Texas cases holding that recovery will never be permitted for mental injury or mental disease, and, as we construe the applicable cases, the court seems to be saying not that there can never be a recovery for a mental injury or mental illness, but that the claimant must produce sufficient probative evidence to convince the jury.

There is a conflict of authorities in out-of-state jurisdictions, with some out-of-state jurisdictions holding that a disabling mental condition brought about by a gradual buildup of emotional stress over a period of time and not by a one exceptional injury causing event, is not compensable unless accompanied by physical force or exertion. See *Ayer v. Industrial Commission,* 23 Ariz. App. 163, 531 P.2d 208 (1975). In *Messex v. Georgia-Pacific Corporation,* 293 So.2d 615 (La.App.1974, writ ref'd), the court said:

> When a compensation claim is predicated upon traumatic neurosis or conversion reaction, the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of such a condition. Id. at 617.

■ Other out-of-state jurisdictions have reached a contrary result. In *Hoage v. Royal Indemnity Co.,* 67 App.D.C. 142, 90 F.2d 387 (1937) *cert. denied,* 302 U.S. 736, 778, 58 S.Ct. 122, 82 L.Ed. 569 (1937), claimant was an insurance claim adjuster whose work load gradually increased. He worked long hours in an effort to complete his work and finally collapsed at his desk. The court said, "We think that the testimony in the record fully considered tends to show that Mr. Rennie by reason of mental strain, worry, and long and excessive hours of labor suffered a collapse which resulted in his total disability as found by the Deputy Commissioner. We think this collapse constituted an accidental injury within the purview of the statute. His case is comparable to that of a manual laborer whose heart collapses as a result of a long continued physical strain or overwork resulting from excessive exertion." See also *Turner v. Southern California Edison Co.,* 42 Cal. App.3d 1036, 117 Cal.Rptr. 358 (1974), where the crucial issue was whether the disability of an employee was occasioned as a result of an injury arising out of employment. The Industrial Accident Board denied the widow her death benefits. The court, in vacating the Board's decision, stated: "Simply stated, Turner was a casualty of industry. He devoted his entire adult life to Edison's service. The long hours, the exasperations and frustrations, the pres-

sures, strains and stresses experienced over the years resulted in hypertension which, in turn, caused the rupture of the aneurysm and his death." See also *Goodwin v. New York State Workmen's Compensation Board,* 20 A.D.2d 951, 249 N.Y.S.2d 63 (Sup. Ct.App.Div.1964), *aff'd,* 15 N.Y.2d 508, 254 N.Y.S.2d 114, 202 N.E.2d 560 (N.Y.1964); *Major v. New York Court of Claims,* 31 A.D.2d 993, 297 N.Y.S.2d 768 (1969); *Insurance Department of Mississippi v. Dinsmore,* 233 Miss. 569, 102 So.2d 691, 694, *aff'd on rehearing,* 233 Miss. 569, 104 So.2d 296 (1958).

In *Dinsmore,* the court said:

It seems unthinkable that, if hypertension may be aggravated either by physical or mental and emotional exertion, courts should be willing to accept the physical as causative, but reject, as not accidental, a disability, proximately resulting from mental and emotional exertion.

Plaintiff's Points of Error, Nos. 1 and 2, are overruled.

◼ Plaintiff, in its third and fourth points of error, asserts that (a) there is no evidence that defendant's disability began on September 4, 1974, and therefore it was not compensable; (b) the overwhelming weight and preponderance of the evidence shows that defendant's disability was caused by his termination on October 28, 1974, rather than September 4, 1974.

Defendant testified that in the week before September 4, 1974, one of his fellow employees in the Diagram Department was missing, causing him to do extra work, and that he was also short an employee in the Service Department; that such week was a very heavy week; that during such week he worked 87½ hours and that during three days of such week he did not go to lunch or to dinner. He stated that on September 3, 1974, he was tired; that on September 4, he did not feel right and felt like he was going to black out; that he had to rest at his desk; that he staggered to his car, and was barely able to drive home. He stated that when he awakened the next morning he felt exhausted and drained and that at 10:30 he called his office and told them that

he was going to the doctor; that he went to his doctor who diagnosed his condition as hypertension; that he tried to work during such week but could not and wound up taking a three weeks' vacation; that the 87-hour week was the straw that broke the camel's back; that his family physician, Dr. Weatherford, stated that he had physical, mental and nervous exhaustion, and high blood pressure. He stated that when he was asked to retire about the end of October, the suggestion was like a knife in his stomach and that when he had to leave it was like the roof collapsed.

An employee of plaintiff who was in advertising, testified that defendant was terminated because of his poor work habits which had persisted for years.

Dr. E. W. Weatherford, defendant's family physician, testified that defendant had attacks of an anxiety depression since 1947; but that the first sign of high blood pressure was on September 5, 1974; that defendant had been working long hours under mental strain and that when he woke up in the morning it was with right hand numbness, right toe tingling, a slight tension in his left chest; he was tense, nervous and had vertigo; that on that day his blood pressure was 180 over 110, and that was the first time he had exhibited high blood pressure.

There was legally and factually sufficient evidence to support the jury's finding that the beginning date of total incapacity was on September 4, 1974, and such jury's finding is not against the weight and preponderance of the evidence. Plaintiff's Points of Error, Nos. 3 and 4, are overruled.

By its fifth point of error, plaintiff asserts that the trial court erred in rendering judgment in favor of the defendant because the overwhelming weight and preponderance of the evidence establishes that the "anxiety depression" suffered by defendant was a noncompensable "ordinary disease of life" under the Workmen's Compensation Statute.

The last sentence of Section 20, as amended, provides that "ordinary diseases of life" to which the general public is ex-

posed outside of the employment shall not be compensable, except where such diseases follow as an incident to an "occupational disease" or "injury" as defined in this section.

Plaintiff asserts that under the record the overwhelming weight of the evidence shows that defendant's disease and its causative factor were neither inherent in his employment nor necessarily present in a greater degree than in employment in general.

This portion of Section 20 has been dealt with infrequently by Texas courts since its enactment and we have found no Texas cases which shed much light on the problem here involved. The only Texas case cited by plaintiff is *Mueller v. Charter Oak Fire Insurance Company*, 533 S.W.2d 123 (Tex. Civ.App.—Tyler 1976, writ ref'd, n. r. e.), wherein the court stated that this sentence "indicates legislative intent to require evidence of probative force of a causal connection between employment and occupational diseases." One scholar defines compensable occupational diseases as "those diseases which are indigenous to the claimant's work or present in an increased degree in that work as compared with employment generally." 1A Larson, The Law of Workmen's Compensation § 41.00 (1973).

■ While it is a close question, we hold that the record establishes that defendant was suffering from an occupational disease which was either indigenous in his work or present in an increased degree in that work as compared with employment generally, and was not an ordinary disease of life not covered under the provisions of Section 20, as amended. There is a definite causative connection between defendant's anxiety depression and the cumulative strain of his work.

■ Plaintiff argues that the disability here involved results purely from mentally traumatic activities and as such is not compensable under the Workmen's Compensation Act. The record here shows that the disability resulted from a combination of physical and mental activities including exceedingly long working hours, nerve racking working schedule, continuous pressure, strain, overwork, and physical exhaustion culminating in high blood pressure, numbness in some parts of the body, dizziness, vertigo and, ultimately, disability to work. There was ample evidence of a combination of physical and mental activities that produced the occupational disease here involved, and it is clear that the claimant has suffered damage or harm to the physical structure of his body. Section 20 of the Workmen's Compensation Act, as amended, provided that the term "injury" or "personal injury" shall also be construed to mean and include "occupational diseases" as therein defined; that the term "occupational disease" shall be construed to mean any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body; and shall also include damage or harm to the physical structure of the body occurring as a result of repetitious physical traumatic activities extending over a period of time. We have concluded that the disability here involved comes within the statutory definitions hereinabove outlined, and is compensable.

In our opinion, the injury to defendant's physical structure in this case is as compensable as that in *Bailey v. American General Insurance Company, supra,* and that due to mental and physical strain, worry, and physical exertion resulting from overwork, defendant suffered a collapse which resulted in his total incapacity.

All of plaintiff's points of error are overruled. The judgment of the trial court is affirmed.

MURRAY, J., did not participate in the disposition of this appeal.