The UNIVERSITY OF TEXAS SYSTEM, Appellant,

v.

Yvonne SCHIEFFER, Appellee.

No. 12826.

Court of Civil Appeals of Texas, Austin.

April 11, 1979.

Rehearing Denied Oct. 3, 1979.

John L. Hill, Atty. Gen., David A. Talbot, Jr., Asst. Atty. Gen., Austin, for appellant.

Broadus A. Spivey, Spivey & Grigg, Austin, for appellee.

O'QUINN, Justice.

Yvonne Schieffer as an employee of The University of Texas System brought this action seeking to recover under the Texas Workmen's Compensation Law a lump sum award for total and permanent disability she alleged occurred on December 15, 1976, while working in the Language Laboratory at the University in Austin.

From a judgment in district court awarding Schieffer recovery of $29,244.64, including medical expenses, The University System has appealed and relies in the main on its contention that the injuries claimed by Mrs. Schieffer are not compensable under Article 8306, section 20, Texas Revised Civil Statutes Annotated.

■ The controlling issue is whether damage or harm caused by a repetitious *mental* traumatic activity, as distinguished from a *physical* activity, is compensable under the statute.

We regard the holding of the Supreme Court in the recent case of *Transportation Insurance Company v. Maksyn*, 580 S.W.2d 334, covering Session Feb. 28, 1979, as controlling under the facts of the present case. Accordingly, we will reverse the judgment of the trial court and will render judgment that Yvonne Schieffer take nothing by her suit.

Yvonne Schieffer at the time of trial in 1978 was 55 years of age, and had been employed about seven years at the University of Texas in Austin, where since the early part of 1972 she had worked in the Language Laboratory. Mrs. Schieffer testified that her supervisor in the Laboratory created a stressful situation in the office by speaking to her in a very loud and gruff tone of voice; that the supervisor would yell at her from time to time and on some occasions confused her by instructions she considered contradictory; but that the supervisor never directed profanities at her.

As plaintiff below, Mrs. Schieffer alleged that "On or about December 15, 1976 . .

[she] was subject to extreme stress of her job which was a producing cause of an esophageal spasm and a nerve-related disorder. Further . . . [she] has suffered as a result of the extreme stress related to her job an asthamatic [*sic*] condition which has become uncontrollable."

Plaintiff further alleged she ". . . would show that the trauma, injury and accidental injuries which Plaintiff complains of . . . was *both an injury* and *an occupational disease* as those terms are defined by sec. 20 of Article 8306, V.A.T.S., and included damage or harm to the physical structure of her body occurring as a result of repetition *physical* traumatic activities extending over a period of time and arising in the course of her employment, and that the date of the injury and cumulative injury, and the *date her disability began was* on or about *December 15, 1976.*" (Emphasis added)

In describing how her disability began on December 15, 1976, Mrs. Schieffer testified as follows under direct examination by her counsel at the trial:

"Q What happened to you on December 15, 1976?

A It was a workday, Wednesday or Thursday, I believe, and we had a part-time employ [*sic*] in the office who didn't have anything to do, and my job was just to sort of delegate the work load and organize it, so whatever had to be done, it took too long to explain to her, so I went to Mr. Stautzenberger [the supervisor] to see if he had anything for her to do that I usually did, and he said, yes, I have some tapes for her to mark, or something like that, and, so, I came back to my desk and at that time I realized that there was a sick leave report * * * that was due, and the time sheets had to be filed in a certain way to make up that sick leave report, so I went back to him—no. Then, I gave her the time sheets and told her to start refiling them, and I went back to him to tell him this, that I had re-

membered something that was of importance and priority and that I felt like it should be done, and he immediately had a very quick reaction and scowled and said not to tell him what to do, that he runs this office around here and that he will tell people what to do, but, again, it was in a yelling, screaming type manner, and it was sort of like there were straws and straws and straws and this was the final straw—

Q The final straw that did what?

A That just made me break down, and I realized I couldn't—I couldn't cope with it. I couldn't handle it anymore, and I broke down and cried—or, no, tears came to my eyes and I went back to my desk and Maria said, why don't you go back and try to explain to him, again, you know, that this is important, and I was reluctant because I didn't know whether he would listen to me; and I went back to him, and he said—he started saying the same thing, again, and then, I left. I just ran out down the hall, as I remember, and, then, later, I think he realized that this was important and I think that report was taken care of; and, then, I went to the personnel office. I didn't know what else to do. I needed help. I realized that I could no longer handle the situation as I had . . .."

Mrs. Schieffer alleged, as indicated earlier, that she would show "the trauma, injury and accidental injuries" she complains of were "both an injury and an occupational disease" as defined in section 20 of Article 8306, "and included damage or harm to the physical structure of her body occurring as a result of repetitious *physical* traumatic activities extending over a period of time." (Emphasis added) But Mrs. Schieffer's testimony, relating her experiences with the supervisor on December 15, 1976, and purporting to identify the incident resulting in her injury, has no relation to "repetitious *physical* traumatic activities." The events

Mrs. Schieffer described as occurring on December 15, and other incidents leading up to that date, may have constituted *mental* traumatic activity, but there is no evidence in her testimony, nor is there other proof in the record, of any *physical* traumatic activity producing the harm or damage claimed as a basis for this suit.

In *Transportation Insurance Company v. Maksyn, supra,* Maksyn as the claimant alleged that the beginning date of his total incapacity was September 4, 1974, (Tex.Civ. App., 567 S.W.2d 845, 846, col. 2), and Maksyn testified that during the week prior to that date he worked more than 87 hours, and that on the evening of September 4 he began feeling bad, felt pressure in his head, and felt as if he were going to black out. (567 S.W.2d 847, col. 1). The Supreme Court, after reviewing the evidence relating to Maksyn's claimed injury, stated: ". . . Maksyn's situation was such that after forty-three years of work, he had succumbed to the pressure, mental strain, overwork, and exhaustion from his managerial duties which culminated in hypertension, nervousness, vertigo, anxiety depression, and disability to perform his work in publishing two newspapers a day. There was an abundance of evidence that mental stimuli produced Mr. Maksyn's condition but no evidence that any physical traumatic activity produced it."

The Supreme Court concluded that the settled law which had developed prior to the amendment of section 20 (Art. 8306) in 1971 remained intact with respect to *injury,* and under the settled law "an *injury* is defined and understood as one that is an undesigned, untoward event that is traceable to a definite time, place, and cause. In other words it is the result of *an accident.*" (Emphasis added)

The Court distinguished the injury in *Bailey v. American General Ins. Co.,* 154 Tex. 430, 279 S.W.2d 315 (1955), from the injury in *Maksyn* on the basis that on the occasion of the accident Bailey "became entangled in a cable and escaped death by falling onto the roof of a building." The Court added, "Bailey recovered compensation on the ba-

sis of an accidental injury—not an occupational disease."

Mrs. Schieffer, shortly after her verbal encounter with the supervisor on December 15, consulted a doctor specializing in internal medicine and gastrology concerning the esophageal spasm she experienced after the events of that day. The doctor testified that he diagnosed her condition as diffuse esophageal spasm, a disease of unknown cause, but described as a muscle disorder, which may be aggravated by stress, although stress itself is not a cause of the ailment.

Two psychologists who saw Mrs. Schieffer professionally after the events of December 15 testified at the trial. One psychologist diagnosed Mrs. Schieffer's problem as hysterical neurosis with a passive-aggressive personality trait; a person demanding support from her environment, which if not given, she interprets the environment as hostile; a personality inclined to be evasive and devious, with tendency to dramatize situations. The second psychologist who treated Mrs. Schieffer was of the opinion that Mrs. Schieffer received an injury December 15, resulting in loss of weight, tightened chest, loss of voice, esophagus spasms, and inability to cope with her job. This witness concluded that Mrs. Schieffer's stress and stress-related condition were the result of an accumulated process.

The Supreme Court in *Maksyn* described the "line drawn by the Texas Legislature" in section 20 as "consistent with that drawn by the majority of jurisdictions in the country." The Court quoted by illustration from an Arizona decision in which it was stated, ". . . a disabling mental condition brought about by the gradual buildup of emotional stress over a period of time and not an unexpected injury causing event is not compensable unless accompanied by physical force or exertion." See *Ayer v. Industrial Commission,* 23 Ariz.App. 163, 531 P.2d 208 (1975).

After careful examination of the record in this appeal, we conclude that all the proof upon which Mrs. Schieffer relies to establish her claim for compensation for occupational disease is that *mental* stimuli produced the condition she offers as an occupational disease.

■ In response to special issue number 1, the jury found that ". . . plaintiff [did] receive *an injury* on or about December 15, 1976 . . ." (Emphasis added). The definition of injury which the trial court provided the jury failed to define accidental injury in conformity with *Maksyn,* where the Supreme Court declared ". . . an injury is defined and understood as one that is an undesigned, untoward event that is traceable to a definite time, place, and cause . . . [and] is the result of an accident."

The attorney general timely objected to omission from the court's charge of the element of accidental injury, and submitted a definition describing accident in substantial conformity with the language of the Supreme Court in *Olson v. Hartford Accident and Indemnity Company,* 477 S.W.2d 859 (Tex.1972). Appellee contends that the test of accidental injury, as stated in *Olson,* was met in this case, being the test restated in *Maksyn.* This contention rests apparently on the assumption that independent findings were obtained on both "accidental injury" and "occupational disease," the two theories pleaded by Schieffer in this case.

The record shows that appellee failed to secure an independent finding by the jury of accidental injury. The term *injury* defined in the court's charge did include the definition of occupational disease. The jury's answer under special issue number 1, inquiring whether appellee had sustained an injury as defined, failed to constitute an independent finding of accidental injury. Absent an independent finding of accidental injury, and since the jury found specifically that appellee's injury was an occupational disease, the case was submitted to the jury only on the theory of occupational disease.

We conclude that under the facts of this case, when viewed under the holdings in *Maksyn* and *Olson,* the only viable theory

upon which appellee could have recovered was that of accidental injury. Under the court's charge, with a specific finding by the jury that the injury suffered was an occupational disease and with no finding of accidental injury, it was error to render judgment for appellee.

The judgment of the trial court is reversed. We render judgment that the claimant take nothing by her suit.

## ON MOTION FOR REHEARING

By motion for rehearing, Appellee Schieffer urges this Court (1) to affirm the judgment of the trial court which awarded appellee damages, or, alternatively, (2) to "remand the cause for a new trial in recognition of the interests of justice."

As pointed out in this Court's opinion, we consider the decision of the Supreme Court in *Maksyn*, controlling in the present case, and judgment of the trial court is properly reversed.

■ In urging remand of the cause for new trial, appellee invokes Rule 434 and relies on *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.Sup.1972). A court of civil appeals, under Rule 434, may not remand a case, instead of rendering judgment, ". . . without relying upon a good and sufficient reason for so doing, *reflected by the record.*" (Emphasis added). *Jackson v. Ewton*, 411 S.W.2d 715, 718 (Tex.Sup.1967).

The holding in *Morrow v. Shotwell, supra,* is not helpful to appellee, for in that case the record itself made it clear that due to mutual mistake of the parties in description of the real property, on which plaintiff sought specific performance of a sales contract, plaintiff was unable to recover. But the Supreme Court, in the interest of justice, remanded the cause to permit plaintiff to seek reformation of the contract in which the mutual mistake as to description appeared, as reflected by the record.

In proceeding to further discussion, it should be pointed out that the Supreme Court in *Maksyn* quoted with approval language of an Arizona appeals case in which the court stated ". . . a disabling mental condition brought about by the gradual buildup of emotional stress over a period of time and not by an unexpected injury causing event is not compensable unless accompanied by physical force or exertion." (580 S.W.2d 334, 338, col. 2).

■ In deciding whether rendition is proper, the appellate court will look to the record to ascertain whether the complaining party would be able to recover if the case had been tried on the right theory. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 799 (1951). The record in this case reflects that the evidence of both parties was well developed. Trial continued through at least three days, resulting in a statement of facts consisting of four volumes and comprising more than 700 pages. The record shows that appellee as plaintiff below pleaded ". . . she was subject to extreme stress of her job . . . [and] had suffered as a result of the extreme stress . . ." Appellee's testimony plainly evidenced that her emotional problems emanated from the ". . . yelling, screaming type manner, and it was sort of like there were straws and straws and straws and this was the final straw . . ."

In her motion for rehearing appellee does not suggest or point to existence of any evidence, other than that appearing in the record of trial, which would justify a new trial on the theory that she suffered accidental personal injury accompanied by physical force or exertion. *Jackson v. Ewton,* at 411 S.W.2d 719, col. 1. It is obvious that appellee is precluded from recovery on the theory of occupational disease under the holding in *Maksyn*. As pointed out by the Supreme Court in *Benoit v. Wilson, supra,* "Rendition of judgment, where a case has been tried upon the wrong theory, should only occur where the record discloses that the complaining party would not have been able to recover had the case been tried on the right theory." (239 S.W.2d 799, col. 1).

Our review of the extensive record in this case results in the firm conclusion that appellee as plaintiff below would not have been able to recover even if she had conformed to the rule of *Maksyn*. All of the

evidence demonstrates that appellee is entirely reliant upon a disabling mental condition brought about by the gradual buildup of emotional distress, and did not in any manner suffer an unexpected personal injury accompanied by physical force or exertion.

Further grounds are present for rendition of judgment in this case. Appellee requests that if this Court finally reversed judgment of the trial court, the cause be remanded for new trial, at which full development of the facts may be attempted under the correct theory of accidental injury. Appellee's premise appears to be that the decision in *Maksyn* deprived her of judgment, and that if she had known she was proceeding on a wrong theory, she would have sought submission of issues under the theory of accidental injury. This is not consistent with the record.

At trial appellee pleaded, in "Plaintiff's Exceptions and Supplemental Petition," ". . . Plaintiff would show that the trauma, injury and accidental injuries which Plaintiff complains of in her Original Petition, was [*sic*] both an injury and an occupational disease as those terms are defined by sec. 20 of Article 8306 . . ." Thus appellee pleaded for recovery under both accidental injury and occupational disease; yet chose to permit without objection to have the issues submitted limited only to occupational disease.

■ Rule 279, Texas Rules of Civil Procedure, provides that ". . . Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived . . ." Appellee at trial by failing to request special issues on accidental injury, waived that theory as a ground of recovery. See *Ormsby v. Ratcliffe,* 117 Tex. 242, 1 S.W.2d 1084, 1085 (1928); *Watkins v. Texas Employers' Insurance Association,* 534 S.W.2d 443, 445 (Tex.Civ.App. Austin 1976, writ ref'd n. r. e.).

Appellee contends that the decision in *Maksyn* created exceptional circumstances warranting this Court to remand the cause for new trial. The law pertaining to accidental injury under section 20 of Article 8306 was not changed by the Legislature by the 1971 amendments, and that law has been defined by the courts not a few times. See *Olson v. Hartford Accident and Indemnity Company,* 477 S.W.2d 859 (Tex.Sup. 1972). Although the decision in *Maksyn* did perhaps alter the right of appellee to recover under the theory of occupational disease, *Maksyn* did not affect the theory of accidental personal injury accompanied by physical force or exertion. Appellee's failure to obtain submission of issues pertaining to accidental injury appears to be based upon knowledge of well established law and recognition that the facts developed at trial rendered the theory of accidental injury an improper ground of recovery.

We find no basis for remand of the cause, and appellee's motion for rehearing is overruled for the reasons stated.