Billy FISHER, Appellant,

v.

Les ROPER, R.S. Mosely, Dayton
Boren, David Neal and Brady
July Jubilee, Inc., Appellees.

No. 04–85–00388–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 27, 1987.

Rehearing Denied March 30, 1987.

James G. Murry, San Antonio, for appellant.

Morris M. Reese, Jr., Clyde A. Wilson, Jr., San Angelo, for appellees.

Before CANTU, REEVES and CHAPA, JJ.

CHAPA, Justice.

This is an appeal from a jury trial as a result of a contract entered into by plaintiff Billy Fisher (Fisher) and defendant Brady July Jubilee, Inc. (Brady July Jubilee). Appellees Les Roper, R.S. Mosely, Dayton Boren, and David Neal are alleged agents of Brady July Jubilee. Hereinafter, Brady July Jubilee, Inc., Roper, Mosely, Boren and Neal will be referred to individually or collectively as "appellees" where appropriate. Although various causes of action are alleged in the pleadings the basic cause is a breach of contract. The jury returned a verdict in favor of Fisher; however, the trial court granted a Motion for Judgment Non Obstante Veredicto in favor of appellees. The principal issue before us is whether the trial court erred in granting the Motion for Judgment Non Obstante Veredicto and rendering judgment against the verdict.

The contract involves the entering of Fisher's two-year-old quarter horse mare known as "Straw Cause" in a horse racing futurity under the auspices of the American Quarter Horse Association. Trials were conducted on or about July 1, 1979, and finals and consolations conducted on or about July 8, 1979. Under the contract, Fisher paid Brady July Jubilee the amount

of $415.00 to enter the futurity and it was agreed by all that the races would be conducted under all rules and regulations of the G. Rollie White Downs and the American Quarter Horse Association.

The American Quarter Horse Association rules as developed at trial and which are pertinent to this particular appeal are as follows:

Rule 28:

If the Stewards find that any medication or a drug has been administered or attempted to be administered to a horse before a race which is of such character as could effect the racing conditions of the horse, the Stewards shall declare the horse from the race.

Rule 29:

No participant shall have in his or her possession within the grounds of a graded meet, any drug which might effect the speed or action of the horse or hypodermic needle or syringe or similar instruments which may be used for injections. Possession of an item prohibited by this rule shall, in addition to being grounds for suspension and or a fine of the individual by the track Stewards may constitute grounds for removal of the horse from the scheduled race or race meet.

Rule 113:

The Stewards shall have the power to have tested or caused to be examined by a qualified person any horse entered in a race or which has run in a race.

Rule 114:

Upon reasonable belief, the Stewards shall request permission for the search of a person or equipment of an owner, trainer, jockey or groom suspected of possession of an illegal instrument or drug, which search shall be conducted by such officials or other persons as they designate. Refusal to comply with such request shall constitute cause for disqualification of the horse in such person's care or ownership or suspension or fine as provided by Rule 106 above, or both. '

On July 1, 1979, Fisher produced his quarter horse at the G. Rollie White Downs for the initial race. The horse was entered in the 11th race on the racing card for that day. Evidence was presented that Brady July Jubilee and the G. Rollie White Downs were one and the same and that Brady July Jubilee was in complete control of the G. Rollie White Downs and its personnel. When Straw Cause reached the saddling paddock, a few minutes before the beginning of the race, the Race Stewards, Mosely, Boren and Neal, caused Straw Cause to be "scratched" from the race thereby denying participation of the filly.

The Race Stewards allege that the reason they "scratched" Straw Cause was because of what they were told by one Aaron Lee Newsom, and Roper. Newsom told the Race Stewards that he had become suspicious of the handlers of the filly in question and had later noticed what he termed to be a part of a syringe inside the shirt of one of the handlers. Roper informed the Race Stewards that he had seen a syringe being removed from the neck of the filly by one of the grooms. These contentions were challenged by Fisher through cross-examination and introduction of paraphernalia normally associated with the grooming of horses which could have been mistaken for a syringe.

According to Mosely, Boren and Neal, in scratching the said filly, they relied upon Rule 28 and 29 of the American Quarter Horse Association regulations which were effective on January 1, 1979.

No Steward or anyone else in authority or under their direction requested permission to search or made a search for an illegal instrument or drugs. No syringe, illegal instrument, or drug was ever found. Evidence of a small wet spot discovered on the neck of the filly was presented.

Although Fisher specifically requested prior to the race and after the alleged injection, that Straw Cause be allowed to race and then be tested for any illegal drugs, the said request was denied.

At the end of the trial, Fisher requested several special issues including additional damages, exemplary damages, and attorney's fees which the trial court refused with the exception of one for specific dam-

ages, submitting its own special issues. The court's special issues other than specific damages submitted and answered by the jury as follows:

SPECIAL ISSUE NO. 1

Under all the facts and circumstances in this case, do you find that the defendant, Brady July Jubilee, Inc., wrongfully scratched the horse "Straw Cause" from the race in question?

Answer "yes" or "no." A "yes" answer must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no."

We, the Jury, answer yes.

You are instructed in answering Special Issue 1, that the said defendant, Brady July Jubilee, Inc., in the operation of the race meet in question occupied a fiduciary relationship to the public, including the Plaintiff herein. One occupying a fiduciary relationship to another must measure his conduct by high equitable standards, and not by the standards required in dealings between ordinary parties.

SPECIAL ISSUE NO. 2

Under all the facts and circumstances in this case, do you find that the Defendants, R.S. Mosely, Dayton Boren and David Neal wrongfully scratched the horse "Straw Cause" from the race in question?

Answer "yes" or "no." A "yes" answer must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no."

We, the Jury, answer yes.

After the verdict, the trial court granted a judgment non obstante veredicto for the appellees and ordered that Fisher take nothing from any of the appellees.

Fisher has perfected this appeal and complains about the trial court's refusal to submit some of his special issues and the granting of the Judgment Non Obstante Veredicto.

In his first two points of error appellant complains of the trial court's granting judgment non obstante veredicto contrary to the verdict.

Rule 301 of the Texas Rules of Civil Procedure authorizes the trial court to "render judgment non obstante veredicto if a directed verdict would have been proper, and provide[s] further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence." Where a non obstante veredicto is granted in a case involving "no evidence," the trial court is authorized to render a final judgment contrary to the verdict. *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970). "No evidence" is described as a question of law with no evidence to support the verdict. *Id.*

In the case before us, the trial court granted the Judgment Non Obstante Veredicto based on "no evidence" and rendered a final judgment contrary to the verdict. Therefore, if any evidence of probative value exists in the record to sustain the answers of the jury, the trial court erred.

The record clearly reflects that the contract included compliance with all the rules of the American Quarter Horse Association. By their own admission, the Stewards did not comply with Rules 113 and 114. Although the Stewards contend their actions in scratching Straw Cause were partly taken under Rule 28 of the American Quarter Horse Association, no evidence was ever presented to them that whatever was injected or attempted to be injected in Straw Cause was "of such character as could effect the racing condition of the horse." Further, in spite of the fact that one witness advised them that he had seen a part of what he described as a syringe inside the shirt of the groom, and another stated he had seen a syringe pulled out of the neck of the filly, no prohibited paraphernalia or drugs were ever discovered at or near the area. Evidence of legal paraphernalia associated with the grooming of horses which could be mistaken for a syringe was also presented to the jury. Further, evidence was presented by Fisher that the actions of the G. Rollie White Downs personnel were the actions of Brady July Jubilee. All other appellees were partici-

pating at the time as personnel of G. Rollie White Downs.

All issues of fact are clearly within the province of the jury, and the jury is authorized to determine what weight, if any, should be given any testimony and to resolve any conflicts or inconsistencies in the evidence. *Town & Country Mobile Homes, Inc. v. Bilyeu*, 694 S.W.2d 651, 656 (Tex.App.—Fort Worth 1985, no writ). By their answers, the jury believed the filly in question was wrongfully "scratched."

■ Considering the entire record, we conclude that some evidence exists to sustain the answers of the jury, and the trial court erred in granting the judgment non obstante veredicto and rendering judgment against the verdict.

We must now decide whether to remand for a new trial or render a judgment. It should be noted that appellant initially seeks relief in a form of a new trial.

In 1957, TEX.R.CIV.P. 434 (now TEX.R. APP.P. 81) was amended for the purpose of requiring a final disposition of a case by the appellate court, where a judgment notwithstanding the verdict is erroneously rendered by the trial court, on the basis of the record before it, and to order a remand only as to questions that require the taking of additional evidence, such as jury misconduct. *Jackson v. Ewton*, 411 S.W.2d 715, 718 (Tex.1967); Rule 434 (now TEX.R. APP.P. 81). Under such circumstances a remand of the cause for a new trial under Rule 434 (now TEX.R.APP.P. 81) may occur only in unusual situations. *Jackson*, 411 S.W.2d at 718; *Scott v. Liebman*, 404 S.W.2d 288 (Tex.1966). An appellate court may not remand for a new trial instead of rendering judgment without relying upon good and sufficient reasons for so doing. TEX.R.CIV.P. 324, 434 (now TEX.R.APP.P. 81), 505 (now TEX.R.APP.P. 180); *Jackson*, 411 S.W.2d at 718; *University of Texas System v. Schieffer*, 588 S.W.2d 602 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.). We will therefore direct our attention towards determining if a good and sufficient reason exists to remand for a new trial.

In point of error four, Fisher complains because the trial court refused his requested issue on exemplary damages. Point of error four is premised on appellant's contention he has plead and proved his cause of action of breach of a fiduciary relationship which entitles him to an issue on exemplary damages.

■ A fiduciary relationship exists when the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation. It exists where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard for the interest of the one reposing confidence. *Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980); RESTATEMENT OF TORTS 2d, § 874. A fiduciary relationship generally arises over a long period of time when parties have worked together toward a mutual goal. To establish a fiduciary relationship, the evidence must show that the dealings between the parties have continued for such a period of time that one party is justified in relying on the other to act in his best interest. *O'Shea v. Coronado Transmission Co.*, 656 S.W.2d 557, 563 (Tex.App. —Corpus Christi 1983, writ ref'd n.r.e.). To transform a mere contract into a fiduciary relationship, the evidence must show that the dealings between the parties have continued for such a period of time that one party is justified in relying on the other to act in his best interest. *Thomson v. Norton*, 604 S.W.2d 473, 476 (Tex.Civ.App. —Dallas 1980, no writ).

■ In the case at bar, the trial court found appellee Brady July Jubilee, Inc. was a fiduciary as a matter of law and so instructed in the charge. Such a finding as a matter of law under the present circumstances is questionable. However, since the appellees have failed to properly preserve this error by cross-point of error and argument, it is waived. TEX.R.APP.P. 74(d), (e), (f). TEX.R.CIV.P. 324. The question follows whether issue number one heretofore set out entirely, could be interpreted as a finding of a breach of a fiduciary obligation. The initial reading of this issue would indicate it as a breach of con-

tract issue. However, considering that the instruction and definition of "fiduciary" are set out immediately thereafter and the direct reference of its application to issue number one, it could possibly also be interpreted as a breach of fiduciary obligation finding. Where appropriate, in a case of a breach of a fiduciary obligation the complainant is entitled to an issue on exemplary damages. *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502 (Tex.1980); *International Bankers Life Insurance Co. v. Holloway,* 368 S.W.2d 567 (Tex.1963). This requested issue was refused by the trial court. Our difficulty in rendering judgment arises from the ambiguity of the findings.

Therefore, we conclude that good and sufficient reason exists for remanding this cause for a new trial. TEX.R.CIV.P. 324.

The judgment of the trial court is reversed and the cause remanded for a new trial.

CANTU, Justice, concurring.

I agree that the judgment should be reversed and the cause remanded for new trial because in reviewing the evidence in the light most favorable to the non movant's case, *Burt v. Lochausen,* 151 Tex. 289, 249 S.W.2d 194 (1952), it cannot be said that there exists no evidence that supports the general issue submitted to the jury.

Under Special Issue No. 1 [1] the jury was authorized to return an affirmative answer if it found any evidence reflecting a wrongful disqualification of the appellant's horse.

The only theory advanced for disqualification under the testimony finds its basis under the American Quarter Horse Association's Rules 28 and 29.[2] Thus, there is no reason in the record for considering rules 113 and 114 [3] as a basis for disqualification. Moreover any discussion addressing a failure to comply with these rules is immaterial to the disposition of this case since the jury finding cannot find support in a theory that never arose. It is conceded by appellees that they did not comply with rules 113 and 114. But it is furthermore uncontraverted that these rules played no part in the disqualification. Thus only rules 28 and 29 can be the basis for a finding of wrongful disqualification.

If there is any evidence of probative force that indicates a wrongful disqualification under rules 28 and 29 the trial court was not authorized to enter a judgment non obstante veredicto.

Under rule 28 disqualification was proper if it was shown that a medication or drug was administered or attempted to be administered. Under rule 29 a disqualification could be had if it was shown that a drug or hypodermic needle or similar instrument was in the possession of a participant.

Both the possession and/or use of drugs and paraphernalia were highly contested issues. Consequently, it was never conclusively established that either or both of the rules in question were violated. Thus there remained factual issues to be determined by the trier of fact from the existing conflicting evidence. *Lockley v. Page,* 142 Tex. 594, 180 S.W.2d 616 (1944).

Under a "no evidence" standard of review such as is raised by a motion for judgment non obstante veredicto the trial court was not authorized to set aside a jury finding supported by some evidence. *Whiteman v. Harris,* 123 S.W.2d 699 (Tex. Civ.App.—Fort Worth 1938, writ ref'd).

For the foregoing reasons I concur in the result.

---

1. "Under all the facts and circumstances in this case, do you find that the defendant, Brady July Jubilee, Inc., wrongfully scratched the horse "Straw Cause" from the race in question."

2. *Supra,* in Majority Opinion.

3. *Supra,* in Majority Opinion.