# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00258-CV

---

**Casey Lee Mamoe, Appellant**

**v.**

**Ynocencia Leilany Mamoe, Appellee**

---

### FROM COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
### NO. 22-3473-FC1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Casey Lee Mamoe, appearing pro se, appeals from the trial court's agreed final divorce decree terminating his marriage to Ynocencia Leilany Mamoe and providing for the conservatorship, possession, access, and support of the parties' two minor children.[1] We will affirm the trial court's divorce decree.

Ynocencia filed a pro se petition for divorce seeking sole managing conservatorship of the children and a modified possession order incorporating the parties' informal possession schedule they had devised since separating.[2] After filing a pro se answer

---

[1] The trial court's decree changed Casey Lee Mamoe's name to his pre-marriage name, "Casey Lee Tresner," but the decree and this appeal are styled using his name from the marriage, "Casey Lee Mamoe," and thus we use his married name. Additionally, for clarity we use the parties' first names in this opinion.

[2] In an amended petition, Ynocencia specified that she was requesting that Casey be granted "early in the day visitation on Saturdays, starting with every other weekend" until Casey obtains a vehicle.

and general denial, Casey counter-petitioned for divorce, seeking joint managing conservatorship—with Ynocencia having the exclusive right to determine the children's primary residence—and that he have possession of the children every Saturday and Sunday.

Ynocencia set the case for a final hearing on the trial court's uncontested docket because the parties had signed an agreement for the rendition of an agreed final divorce decree. At the hearing, the trial court inquired of Casey whether he still consented to the agreement's provisions because it was "unusual to get a counterpetition filed post the agreement."[3] Casey, having been sworn, stated, "Yes, I am willing to go with the original agreement." He further stated that he had been a little "concerned" with the agreement's provisions requiring him to pay for the children's dental and health insurance but that he had recently received a new job offer and was now "comfortable with" those provisions. The trial court presented to Casey his signed copy of the agreed final divorce decree and asked him, "This is your agreement today because you've overcome your concern about being - - having the ability to pay support for your children?" Casey responded, "Yes, Your Honor."

The court then commented that the agreed decree contained blank lines for the amounts of child support that Casey must pay and questioned him about his income, after which the court recessed briefly while it consulted the statutory child-support guidelines. Thereafter the court went back on the record and had the parties prove up the necessary statutory requirements for the divorce. After Ynocencia testified, Casey testified that he was requesting a name change and was asking the court to grant the divorce and approve "all the agreements we have entered into." The court stated that because the parties were asking for Ynocencia to be appointed sole

_____

[3] Casey signed the agreement March 1, 2023—agreeing to the form and substance of the agreed final divorce decree—and filed his counter-petition March 27, 2023. The final hearing occurred March 30, 2023.

managing conservator, which is contrary to the statutory presumption for parents to be appointed joint managing conservators, it needed "more testimony on why that would be in the best interest of" the children.

Ynocencia testified on that issue, including her belief that Casey is not "capable to make safe decisions for our children," had "disappear[ed] last year and all of this year," and "was going through" a "lot of personal things." She had made the decisions regarding the children (including the parties' two older, adult children) for "the last 21 years" and has "always been the person taking care of [the] children" and was "the sole person taking care of them" for the last year. As for the agreed modified possession schedule—granting possession of the children to Casey on the first, third, and fifth Saturday of each month from 10 a.m. until 2 p.m.—Ynocencia testified that she believed it was "fine" for the younger child but that the older child had "asked to have nothing to do with this moving forward" and that she wanted to respect his wishes. Nonetheless, she did not ask to alter the modified possession schedule as recited in the agreed decree, and Casey did not object to it or represent that he did not agree to the possession schedule. The trial court hand-wrote into the decree the amounts of child support Casey must pay and asked him whether he agreed, to which Casey replied affirmatively. At the end of the hearing, the trial court rendered judgment on the parties' agreement.

As an initial matter, we note that we liberally construe pro se pleadings and briefs; however, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978). A relaxation of the rules in favor of self-represented litigants would provide such parties with an unfair advantage over parties who are represented by counsel. *Viasana v. Ward County*, 296 S.W.3d 652, 654 (Tex. App.—El Paso 2009, no pet.).

3

In his one-page brief, Casey does not explicitly identify any issues presented for review but contends that he "now disagree[s] with" the agreed divorce decree except for its provisions pertaining to child support and Ynocencia's right to designate the children's primary residence. He claims that when he initially signed the agreement, it "was not completely filled out" but that Ynocencia "verbally assured" him it would be completed at a later date "with only the information that we had previously agreed upon." During the final hearing, he "realized that [he] was misled and that additional information was added to the decree which we had never discussed including amount/location/dates of child visitation and division of tax debt." Nonetheless, Casey states in his brief that he "chose to comply during the final hearing" even though he "truly believe[s] that [he] was tricked into making a quick decision which [he] now regret[s]." He also represents that Ynocencia recently notified him that he is not allowed to have visitation with the older child, even though such restriction does not appear in the final decree. He asks this Court to "reopen this case and allow for a fair trial in order to assure that the final outcome is really best suited for each of the children involved."

When, as here, the brief contains no arguments or citations to the record or legal authority, nothing is presented for review. *In re J.M.H.*, No. 07-21-00017-CV, 2022 WL 663281, at *1 (Tex. App.—Amarillo Mar. 3, 2022, no pet.) (mem. op.); *see* Tex. R. App. P. 38.1 (requiring briefs to contain, among other items, statement of issues presented and clear and concise argument for contentions made, supported by citations to record and authority). "Bare assertions of error, without argument or authority, waive error." *McKellar v. Cervantes*, 367 S.W.3d 478, 484 n.5 (Tex. App.—Texarkana 2012, no pet.); *see Fredonia State Bank v. General Am. Life Ins.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to inadequate briefing). Furthermore, a party cannot appeal from

a judgment to which it has consented or agreed, absent an allegation and proof of fraud, collusion, or misrepresentation. *Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 562 (Tex. App.—Dallas 1989, no writ). A party's consent to the trial court's rendition of judgment waives any error, except for jurisdictional error, contained in the judgment, and that party has nothing to properly present for appellate review. *Gillum*, 778 S.W.2d at 562. Casey has not asserted any jurisdictional error, nor have we found any.

Although in his brief Casey alludes to being "tricked" and "misled" by Ynocencia regarding the terms contained in the agreed divorce decree, he did not file a motion for new trial or any other post-judgment motion, and he does not cite any evidence in the record to support his vague assertion of trickery and misrepresentation. *See Baw*, 949 S.W.2d at 766. Furthermore, he represents that he "realized" during the final hearing that the agreement contained terms that he and Ynocencia had not discussed but nonetheless "chose to comply" with the agreement and now "regrets" his decision, which contradicts his contention that he was tricked or misled. The trial court signed the decree only after both Casey and Ynocencia specifically confirmed that they agreed to the decree's terms, and the trial court posed direct questions to Casey about his consent and received affirmative answers from him. Because Casey's testimony and signature signify his approval and consent to the terms of the agreed decree as to both form and substance, he has waived any complaints he now attempts to raise on appeal. *See Boufaissal v. Boufaissal*, 251 S.W.3d 160, 162 (Tex. App.—Dallas 2008, no pet.).

We affirm the agreed divorce decree rendered by the trial court.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed:   September 11, 2024