**Opinion filed December 11, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00289-CV

_____

**RUFINO PALMA FLORES AND JOSE LUIS ARELLANO QUINONES, Appellants**

**V.**

**RED ARROW COMPANY, LLC; GARMUZ, LLC; JESUS GARCIA MUNOZ; AND SINDY ALMENDARES, Appellees**

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-23-02-0202-CV**

## M E M O R A N D U M   O P I N I O N

Appellants, Rufino Palma Flores and Jose Luis Arellano Quinones, proceeding pro se, appeal the summary judgments rendered by the trial court. Flores raises one issue on appeal. Quinones raises two issues. We affirm.

*Background Facts*

Appellees, Red Arrow Company, LLC (Red Arrow), Garmuz, LLC (Garmuz), Jesus Garcia Munoz (Garcia), and Sindy Almendares, individually, brought suit against Flores and Quinones in February 2023. In their original petition, Appellees alleged causes of action for breach of contract, common law fraud, interference with a contractual relationship, civil conspiracy, and defamation. Appellees sought monetary damages, a declaratory judgment, a temporary restraining order, and an injunction against Flores and Quinones.

Appellees alleged that the events giving rise to the underlying dispute occurred after Garcia, as manager of Garmuz, entered into a business agreement with Flores to purchase Red Arrow. Appellees further alleged that, after the purchase was complete, Flores interfered with Red Arrow's operations in many ways, including by attempting to remove Garcia from the Secretary of State's business listing; contacting the Federal Motor Carrier Safety Administration and suspending necessary registration numbers for Red Arrow's vehicles; and sending disparaging communications to Red Arrow's employees, Red Arrow's clients, and third parties. As a result, Red Arrow's largest client cancelled its agreement with Red Arrow. Appellees also alleged that Flores and Quinones made misrepresentations to drivers, clients, and customers of both Red Arrow and Garmuz, and that they sent harassing text messages and e-mails containing vulgar content and threats to Appellees and Appellees' employees.

Appellees filed a traditional motion for summary judgment in October 2023. The trial court scheduled the hearing on the motion for November 17, 2023. At the outset of the hearing, Appellees' attorney announced that Appellees had reached an agreement with Flores. Appellees' attorney presented the trial court with an Agreed Interlocutory Summary Judgment signed by Flores and Appellees' attorney. Appellees' attorney discussed the Agreed Interlocutory Summary Judgment with

Flores on the record. Flores stated that he understood that Appellees' attorney was not his attorney, that he had not been made to sign the judgment through any unlawful threats, and that he was not operating under duress or otherwise incapacitated. Flores agreed that he had seen everything in the document and that the document bore his signature. Flores further stated that he understood that the agreement resolved all matters between himself and Appellees, and that the agreement made clear he did not own Red Arrow and prohibited him from interfering in the business or contacting Appellees.

The trial court then accepted the Agreed Interlocutory Summary Judgment and, after again confirming Flores's signature, asked Flores, "And you understand this resolves all the cases between you and the plaintiff[s]; do you understand that?" Flores responded in the affirmative to the trial court's inquiry. The trial court then remarked, "Very well. Sir, your case is now resolved." The trial court signed the Agreed Interlocutory Summary Judgment pertaining to Flores on that day at the hearing.

The trial court then considered the motion for summary judgment as it related to claims pending against Quinones. After a brief recess, Appellees' attorney announced that Appellees had also reached an agreement with Quinones. On the record, Appellees' attorney confirmed that Quinones had seen the Agreed Final Summary Judgment and that he had signed it. When asked whether he understood that the document made clear he was not an owner of Red Arrow and prohibited certain acts by him, Quinones responded that he did. Quinones agreed that Appellees' attorney had not threatened him in any way. Appellees' attorney then sought to confirm Quinones's capacity to sign, asking, "So -- but you're not -- you don't have a mental incapacity or you're not declared incompetent or anything, are you?" Quinones responded, "No. Only thing, I'm on medicine on [sic], that is the only thing I got." Appellees' counsel examined Quninoes on his response, asking,

"Is that affecting your ability to sign? Do you believe you could still sign?" Quinones responded, "I believe I can still sign it" and he signed the Agreed Final Summary Judgment at that time.

The trial court confirmed that the signature was Quinones's signature. At that time, the trial court stated, "Very well. I am going to go ahead and sign this and date it today, 11/17/23. Gentlemen, I believe that resolves all matters in this case; is that correct?" Appellees' attorney answered in the affirmative, while Quinones did not respond.

The Agreed Interlocutory Summary Judgment only applied to Flores. However, its terms were essentially incorporated into the Agreed Final Summary Judgment so that it applied to Flores and Quinones. Both judgments made clear that Garmuz is the sole owner of Red Arrow and that Flores and Quinones have no ownership rights or interest in Red Arrow or any of its property or claims. The judgments also enjoined Flores and Quinones from, among other things, contacting Appellees, representing any interest in Red Arrow, or otherwise interfering in Appellees' business operations.

*Analysis*

In Flores's sole issue and Quinones's first issue, they both contend that the trial court "abuse[d] its discretion when it rendered judgment by agreement despite lacking the power to do so." In his second issue, Quinones contends that the Agreed Final Summary Judgment is void as to him because he was "incapacitated" when he signed the judgment.

On some level Flores and Quinones are asserting in their first issue a lack of consent to the agreed judgment. For a valid consent judgment to exist, it is not sufficient that the parties may have at some time consented; the parties must explicitly and unmistakably give consent, and their consent must exist at the very moment the trial court undertakes to make the agreement the judgment of the trial

4

court at rendition. *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984). A party has the right to revoke his consent at any time before the trial court renders judgment. *Samples Exterminators v. Samples*, 640 S.W.2d 873, 874–75 (Tex. 1982). "The proper inquiry is whether the information in the trial court's possession is clearly sufficient and of such a nature as to put the court on notice that a party's consent is lacking and to require the court to make further inquiry before rendering judgment." *Sohocki v. Sohocki*, 897 S.W.2d 422, 424 (Tex. App.—Corpus Christi–Edinburg 1995, no writ). "When a consent judgment is rendered without consent or is not in strict compliance with the terms of the agreement, the judgment must be set aside." *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) (citing *Burnaman v. Heaton*, 240 S.W.2d 288, 291–92 (Tex. 1951)).

"Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk." *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995) (first citing *Samples*, 640 S.W.2d at 875; and then citing *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 59 (Tex. 1970)). Flores contends that the trial court, in stating, "Very well. Sir, your case is now resolved," did not clearly indicate an intent to render judgment as to the Agreed Interlocutory Summary Judgment. Quinones similarly contends that the trial court, in stating, "I am going to go ahead and sign this and date it today. . . . I believe that resolves all matters in this case," did not clearly indicate an intent to render judgment as to the Agreed Final Summary Judgment.

Unlike in *Leal*, the trial court's statements in this case do not indicate an intent to render judgment at a time in the future rather than during the hearing. *Id.* at 858. Further, the trial court went beyond merely making these statements; the trial court signed and dated both the Agreed Interlocutory Summary Judgment and the Agreed Final Summary Judgment on the day of the hearing. The trial court further stated on the record, as to the Agreed Final Summary Judgment, "I am going to go ahead and

sign this and date it today, 11/17/23." The Agreed Interlocutory Summary Judgment and the Agreed Final Summary Judgment both state that, "the Court . . . renders the following judgment." We conclude that the trial court's statements, when combined with the trial court's prompt signing and dating of both documents, clearly indicated an intent to render judgment on the date of the hearing. And at no time prior to the trial court's rendition of judgment did either Flores or Quinones withdraw their consent to the agreed judgment.

Flores and Quinones additionally contend that the trial court lacked power to render an agreed judgment because an "essential feature" was missing from the judgment. "To constitute an enforceable agreement for judgment, there should be left nothing for adjustment between the parties relating to the subject-matter of the agreement." *Wyss v. Bookman*, 235 S.W. 567, 569 (Tex. Comm'n App. 1921, holding approved, judgm't adopted).[1] Where "one essential feature" is left undecided or not embodied in the judgment, then the negotiations of the parties never reached the "final stage of meeting of minds upon all matters," which is necessary before an agreed judgment can be rendered. *Id.* A term in an agreement may be seen as "essential" where neither party is willing to agree to the other's proposed judgment that differs as to that term. *See Reppert v. Beasley*, 943 S.W.2d 172, 174 (Tex. App.—San Antonio 1997, no writ).

Flores and Quinones assert that the "essential feature" left undecided by the agreement was whether the judgment would be self-enforcing through the trial court's contempt power or enforceable only through a breach-of-contract action. They both assert that they did not consent to a self-enforcing judgment. As set forth below, Flores and Quinones are incorrect in making this assertion.

---

[1] Flores and Quinones cite *Wyss* and *Matthews v. Looney*, 123 S.W.2d 871, 873 (Tex. 1939) in support of their argument.

In *Reppert*, the parties disagreed as to whether an agreed judgment would be self-enforcing through the trial court's contempt power or enforceable only through a breach-of-contract action. *Id.* at 173. The Fourth Court of Appeals determined that the manner in which the agreed judgment would be enforced was "essential" to the parties because one party refused to agree to a judgment that was not self-enforcing while the other party refused to agree to one that was. *Id.* at 174. Because this essential element was left undecided by the agreement, the trial court was without power to render judgment as to the agreement. *Id.*

*Reppert* is distinguishable from the facts in this appeal. In *Reppert*, the parties' disagreement occurred *prior* to the entry of judgment. *Id.* But in the present case, the parties agreed to the express terms of the final judgment signed by the trial court as evidenced by both their oral responses to the trial court and their signatures on the judgments. *See Gregory v. White*, 604 S.W.2d 402, 403 (Tex. App.—San Antonio 1980, writ ref'd n.r.e.) (finding consent where "the evidence conclusively establishes that the appellant signed the settlement agreement and that the judge had no reason to know of any dissatisfaction that the appellant might have had with the agreement at the time the interlocutory judgment was rendered"); *see also Arriaga v. Cavazos*, 880 S.W.2d 830, 833 (Tex. App.—San Antonio 1994, no writ) (per curiam) (finding consent where the trial court questioned the appellants about their understanding of the arrangement, appellants did not express any disagreement with the settlement, and the agreement was made in open court).

Both the Agreed Interlocutory Summary Judgment and the Agreed Final Summary Judgment provided for a permanent injunction against Flores and Quinones, which enjoined them from eighteen enumerated acts. Thus, Flores and Quinones expressly agreed to the entry of a judgment that provided for a permanent injunction against them. Under Rule 692 of the Texas Rules of Civil Procedure, proceedings for the violation of an injunction are in the nature of a contempt

proceeding. TEX. R. CIV. P. 692 ("Disobedience of an injunction may be punished by the court . . . as a contempt."); *see Grimes v. Brown Cnty.*, No. 11-06-00247-CV, 2008 WL 1723192, at *2 (Tex. App.—Eastland Apr. 10, 2008, no pet.). By agreeing to the entry of a permanent injunction, Flores and Quinones agreed to the enforcement mechanism for the agreed judgment. *See* TEX. R. CIV. P. 692.

We further note that a party cannot appeal from a judgment to which he has agreed absent an allegation of fraud, collusion, or misrepresentation. *See Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ) (citing *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 562 (Tex. App.—Dallas 1989, no writ)); *see also Dunman v. Hartwell*, 9 Tex. 495, 496 (1853) ("The appellants are concluded by their own consent, and their appeal cannot be sustained."). A party's consent to the trial court's entry of judgment waives any error in the judgment except for jurisdictional error, so that party has nothing to properly present for appellate review. *Baw*, 949 S.W.2d at 766 (citing *Gillum*, 778 S.W.2d at 562). However, for a waiver to be valid, each party must explicitly and unmistakably consent to the judgment. *Id.* (first citing *First Am. Title Ins. Co. v. Adams*, 829 S.W.2d 356, 364 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied); and then citing *Bexar Cnty. Crim. Dist. Attorney's Off. v. Mayo*, 773 S.W.2d 642, 644 (Tex. App.—San Antonio 1989, no writ)). Here, Flores and Quinones consented to the judgment at the time of its entry by the trial court.

The trial court did not err in rendering the judgment because Flores and Quinones consented to the judgment. Further, they agreed to the terms of the judgment. We overrule Flores's sole issue and Quinones's first issue.

Quinones asserts in his second issue that the trial court abused its discretion by rendering judgment while he lacked the mental capacity to consent because he was under the influence of prescription medication.

8

"Documents executed by one who lacks sufficient . . . mental capacity may be avoided." *Kinsel v. Lindsey*, 526 S.W.3d 411, 419 (Tex. 2017) (citing *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 193 (Tex. 2009)). The law presumes that every party to a legal contract had sufficient mental capacity to understand his legal rights. *See Draughon v. Johnson*, 631 S.W.3d 81, 94 (Tex. 2021) (citing *Swink v. City of Dallas*, 36 S.W.2d 222, 224 (Tex. Comm'n App. 1931, holdings approved)). A person has the mental capacity to contract if, at the time of contracting, he "appreciated the effect of what [he] was doing and understood the nature and consequences of [his] acts and the business [he] was transacting." *Estate of Riefler*, 540 S.W.3d 626, 636 (Tex. App.—Amarillo 2017, no pet.) (quoting *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 845 (Tex. 1969)). The question of whether a person, at the time of contracting, knows or understands the nature and consequences of his actions is generally a question of fact for the factfinder. *Id.* (citing *Fox v. Lewis*, 344 S.W.2d 731, 739 (Tex. App.—Austin 1961, writ ref'd n.r.e.)). In this instance, the trial court was the factfinder and was the sole judge of the credibility of the witnesses. *See George Joseph Assets, LLC v. Chenevert*, 557 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

At the hearing, Appellees' attorney asked about Quinones's capacity to sign the Agreed Final Summary Judgment. Quinones responded that he did not have "a mental incapacity," but he stated that he was on medication. Quinones did not state that the medication affected his mental capacity. Instead, when asked if it was affecting his ability to sign, he stated, "I believe I can still sign it," and subsequently signed the Agreed Final Summary Judgment.

The trial court was the sole judge of Quinones's capacity to agree to the terms of the agreed judgment. *See id.* "In assessing the evidence, we do not act as a factfinder; we may not pass on the credibility of the witnesses or substitute our judgment for that of the factfinder." *Chenevert*, 557 S.W.3d at 765. Here, the record

does not establish that the trial court's implicit determination that Quinones possessed the requisite capacity was error. We overrule Quinones's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


December 11, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.